IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SAMANTHA BUCHANAN AND STEVEN BUCHANAN, | ) ) ) | CASE NO. 8:20-CV-301 |
| Plaintiff's, | ) ) | |
| vs. | ) ) | DEFENDANT'S MOTION DISMISS MEMORANDUM |
| MORTON SULLIVAN, | ) ) ) | |
| Defendant. | ) | |

FACTS

The defendant, Morton Sullivan has expressed his personal opinion on various topics of concern over the years. On occasion those opinions have dealt directly with attitudes and behaviors displayed by individuals and organizations operating in Omaha, Nebraska. Some have sought to restrain his ability to exercise his First Amendment Right and express his opinion and resorted to the Courts to impose that restraint. See, *Sid Dillon Chevrolet v. Sullivan*, 251 Neb.722,559 N.W.2d 740 (1997) and, *J.Q. Office Equipment, Inc. v. Sullivan* 230 Neb. 397,432 N.W.2d 211 (1988).

The most recent example of this effort to impair Mr. Sullivan's exercise of protected speech occurred in the case brought in the Nebraska State District Court entitled Steven Buchanan and Buck's Inc. d/b/a Buchanan Energy and/or Bucky's or Bucky's Express v. Sullivan, Case No. CI 20-4528. In this most recent case, the plaintiff sought a preliminary injunction to enjoin Mr. Sullivan from expressing his personal opinion regarding the plaintiff's business operation. Judge Wheelock of the District Court of Douglas County, Nebraska took the matter under consideration and issued an Order finding that the plaintiffs had not demonstrated that their request for the injunction met one of the exceptions necessitated by the law regarding prior restraint as outlined in the previous cases that sought to limit Mr. Sullivan's First Amendment right to freely express his personal opinion.

In addition to the legal action undertaken by the plaintiffs, or on their behalf, self-help had been employed in an effort to remove Mr. Sullivan's cyber-gripe website from the internet. Mr. Sullivan and the LLC that he operates has 67 websites on one server and 18 websites on

another server. Of those 85 websites only one was hacked. Only the site devoted to Bucky's Gas Station and Convenience store was hacked and temporarily deleted from the Internet. The site's deletion from the internet occurred on at least two separate occasions before the plaintiffs filed their case in State District Court. The site was backed up and access was again available to internet searches after a few hours. None of the other 84 cyber-gripe websites were deleted. Then, following Judge Wheelock's Order the site was hacked again. This time it was locked so that Mr. Sullivan was unable to access the site. The hacker changed some of the content on the site. But that effort, which is also a violation of state and federal law, did not end this matter. The plaintiffs are now attempting to use the Federal Court and the Telecommunication Act to restrict Mr. Sullivan's exercise of his First Amendment right to express his personal opinion. However, the manner and means by which Mr. Sullivan expressed his opinion does not fall within the Telephone Consumer Protection Act. Any suggestion to the contrary is false and misleading.

ARGUMENT

**The plaintiff's complaint fails to state a claim upon which relief can be granted**

    A.  Mr. Sullivan has scrupulously complied with Nebraska law regarding the manner in which he exercises his right to Free Speech.  Before distributing any message, he submits it to the Nebraska Public Service Commission for review and approval. That was also the procedure followed prior to offering his personal opinion in this instance.

    The Congress made it clear in 1991 that the reason for the implementation of the law was due to the pervasive use of telemarketing in an attempt to sell goods and services to home and businesses. Pub. L. 102–243, §2, Dec. 20, 1991, 105 Stat. 2394 (1)

    At that time, it was also noted that the technologies that might allow consumers to avoid receiving the calls were not universally available. (Id.11). The concerns surrounding this law are no applicable to this situation. Everyone today has access to caller identification which allows for the recipient of the call to ignore it if they so choose. In addition, Mr. Sullivan has not been attempting to market or solicit any recipient of his phone call. He is expressing an opinion on an issue of safety as it relates to the plaintiff's business.

When considering passage of this law, the Congress specifically noted that the Constitution does not prohibit restrictions on commercial telemarketing solicitations. (Id.8) By implication the Constitution does protect the right of individuals to express their personal opinions. "Under the First Amendment there is no such thing as a false idea." *Gertz v Robert Welch, Inc*. 418 U.S.323,339 (1974) While statements of fact capable of defamatory meaning may be actionable, statements of opinion are not. *Id*.

Although, Mr. Sullivan does make phone calls that contains a message, the manner in which he expresses his personal opinion, and the manner in which he delivers that personal opinion does not fall within the definition of 47 U.S.C. §227(a)(1).

In the early 1980's Mr. Sullivan ordered parts from Faxtel, an American Company in order to develop a calling system using a Faxtel 2000 computer. The system was used for a variety of purposes. At the time, the system was fairly advanced and was capable of doing a variety of tasks, including generating random and sequential calls. However, since that time the equipment has broken down on a number of occasions. The original computer has been replaced on two occasion when Mr. Sullivan has been able to locate another 386 computer. The company that originally provided Mr. Sullivan with assistance when he purchased the equipment is no longer in business in America, although a company in India does make products under the Faxtel name. Regardless, parts for the 35-year-old piece of equipment are no longer available.

When Mr. Sullivan seeks to make calls to various members of the public to express his opinion regarding an issue, he starts at the Register of Deeds Office to check on addresses, he uses the old POLK Directories to match addresses to phone numbers, and then he writes out those numbers in long-hand before typing the list into the computer. The computer does not generate the number.

The definition of "automatic telephone dialing system" means equipment which **has the capacity**

      **(A)** To store or produce telephone numbers to be called, using a random or sequential number generator; and

      **(B)** To dial such numbers

Mr. Sullivan's equipment may have had the capacity to store and produce the numbers at one time 35 years ago, but the equipment no longer **has the capacity.** Everything Mr. Sullivan does

3

on the computer is a result of his manually searching for the information in public records and then manually entering that information into his computer.

In addition, the calls made by Mr. Sullivan are not made for a commercial purpose or to solicit anything from the listener. The calls are informational and recitations of Mr. Sullivan's personal opinions. Consequently, the plaintiffs' claims must be dismissed because they are without merit.

B. The Free Speech Clause of the First Amendment prohibits the Government generally from restricting expression because of its message, ideas, subject matter, or content. The plaintiffs are clearly seeking to have the TCPA applied in a manner that would violate these principles. Content-based restrictions on Speech are subject to strict scrutiny, and that the application of the TCPA to this alleged factual situation is content based and unconstitutional.

The bellweather of the First Amendment was to encourage the unfettered interchange of ideas for bringing about the political or social changes desired by the people.
The plaintiff, Steven Buchanan built one of his gas stations/convenience marts on a site that had been used to dump asbestos and materials made from asbestos. He was notified of the hazardous materials on the proposed building site in 1998 but chose to ignore that information thereby posing a risk to his employees and future customers. Mr. Sullivan's phone approved by the Nebraska Public Service Commission--were to alert the public to these health concerns and motivate additional protective action by the plaintiffs in view of the Covid crisis.

C. That calls made by Mr. Sullivan were not for the purpose of solicitation or for the sale or promotion of any property, goods, or services

MORTON SULLIVAN, Defendant

By:/s/TERRENCE J. SALERNO
TERRENCE J. SALERNO#16035
809 N 96TH ST, STE 100
Omaha, Nebraska 68114
(402) 502-9002

Attorney for the Defendant

4

5

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the above and foregoing was served upon the recipients listed below by emailing the same on August 25, 2020

Jason M Bruno
Thomas G Schumacher
260 Regency Parkway Drive
Suite 200
Omaha NE 68114
law@sherrets.com

                /s/TERRENCE J SALERNO