IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SAMANTHA BUCHANAN, and STEVEN BUCHANAN,<br><br>             Plaintiffs,<br><br>vs.<br><br>MORTON SULLIVAN,<br><br>             Defendant. | 8:20-CV-301<br><br>**PRELIMINARY INJUNCTION** |

      This matter came before the Court on December 10, 2020, for hearing on Plaintiffs' Motion for Preliminary Injunction, Filing 5. Both parties appeared by counsel of record and adduced evidence. The day after the hearing in this matter, Plaintiffs represented to the Court that the parties had reached a tentative settlement. Filing 24. In light of that tentative settlement, the Court denied the Motion for Preliminary Injunction as moot without addressing the motion's merits. Filing 27. The Court reinstated the present motion, pursuant to Federal Rule of Civil Procedure 60(b), after the parties represented that settlement negotiations had failed. Filing 31; *see also* Filing 28; Filing 30. For the reasons set forth herein, the Motion for Preliminary Injunction is granted.

### I. BACKGROUND

      This case arises out of defendant Morton Sullivan's alleged use of a machine telephone dialing system to make unsolicited prerecorded calls. Filing 1 at 6. The Court previously denied defendant Morton Sullivan's Motion to Dismiss (Filing 9) on October 30, 2020. Filing 12. In its Memorandum and Order, the Court found that the calls Sullivan was alleged to have made to plaintiffs Steven and Samantha Buchanan's cellular phones using a prerecorded voice would violate the Telephone Consumer Protection Act ("TCPA"). Filing 12 at 6. The Court later ordered the parties to submit affidavit evidence for consideration at a hearing on the Buchanans' Motion

1

for a Preliminary Injunction. Filing 20. For the purposes of the preliminary injunction hearing, the Court admitted Steven Buchanan's affidavit and attachments, Filing 23-1, Samantha Buchanan's affidavit, Filing 23-2, and Steven Buchanan's supplemental affidavit and attachments, Filing 23-3. The Court also admitted Sullivan's affidavit, Filing 21, overruling the Buchanans' objection, Filing 22.

Sullivan has not denied making the calls as alleged but claims in his affidavit, dated December 2, 2020, that he ceased making them in June 2020 and will not resume calling the Buchanans or calling others about the Buchanans. Filing 21. Steven and Samantha Buchanan submitted affidavits stating that between April 1, 2020, and early August 2020, Sullivan placed at least seventy-five unlawful calls to their cellular phones. *See* Filing 23-1 at 1; Filing 23-2 at 1. Steven Buchanan also submitted a supplemental affidavit, five days after Sullivan submitted his evidence, presenting the Court with the content of Sullivan's website, as visited on December 7, 2020. Filing 23-3. Like it did in August, the website still contains the Buchanans' contact information, including their phone numbers, and Sullivan's assurances that the Buchanans' information will be shared with marketing and telemarketing companies worldwide for ten years, that "we will be contacting all of them with our Faxtel 2000 system," and that "everyone can contact these people . . . since this fight is going to last for 5 years!" *Compare* Filing 23-1 at 4-40, *with* Filing 23-3 at 6-42.

The Buchanans seek an injunction pursuant to the TCPA. In relevant part, the TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--

> . . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii). Further, the TCPA expressly provides a private right of action to seek injunctive relief for violations of the statute. 47 U.S.C. § 227(b)(3)(A) ("A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State-- (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation.").

## II. ANALYSIS

The Buchanans move for a preliminary injunction "enjoining and restraining the Defendant Morton Sullivan, his agents, employees, and affiliates from making calls to either Plaintiff on their cellular telephones using an automatic telephone dialing system and/or a prerecorded voice." Filing 5.

"A preliminary injunction is an extraordinary remedy . . . ." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The burden of establishing the propriety of issuing a preliminary injunction is on the movant. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). "When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *United States v. Stover*, 650 F.3d 1099, 1106 (8th Cir. 2011) (quoting *United States v. White*, 769 F.2d 511, 515 (8th Cir.1985)); *see also United States v. Estate Pres. Servs.*, 202 F.3d

3

1093, 1098 (9th Cir. 2000) ("The traditional requirements[1] for equitable relief need not be satisfied since [the statute] expressly authorizes the issuance of an injunction."); *Minnesota ex rel. Hatch v. Sunbelt Communications and Marketing*, 282 F. Supp. 2d 976, 979 (D. Minn. 2002) (finding the TCPA presents "a case in which an injunction is expressly authorized by statute"). "In an action for a statutory injunction, once a violation has been demonstrated, the moving party need only show that there is a reasonable likelihood of future violations in order to obtain relief." *S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 897, 97 L. Ed. 1303 (1953) ("The necessary determination is that there exists some cognizable danger of recurrent violation . . . ."); *S.E.C. v. Comserv Corp.*, 908 F.2d 1407, 1412 (8th Cir. 1990) ("To obtain [a statutory injunction], [Plaintiff] would have had to prove that [Defendant] had violated the law and 'that there [was] a reasonable likelihood of further violation in the future.'" (last alteration original) (quoting *S.E.C. v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2nd Cir. 1978))). The Court will address the prerequisites for a preliminary injunction under the TCPA, the statute's legislative purpose, and the likelihood of continuing violations in turn.

### A. Prerequisites for Remedy

The Buchanans have demonstrated the prerequisites for the injunctive relief they seek. The TCPA expressly authorizes an injunction as a remedy "based on a violation of [subsection b] . . .

---

[1] In the traditional case deciding a motion for a preliminary injunction, the court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

4

to enjoin such violation." 47 U.S.C. § 227(b)(3)(A). Thus, the prerequisite to enjoin Sullivan from making further calls is a demonstration that he has already violated the statute.[2]

To demonstrate a violation of 47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must show the defendant (1) made any call; (2) not for emergency purposes; (3) without express prior consent of the called party; (4) using any automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice; (5) to any telephone number assigned to a cellular telephone service. It is undisputed that Sullivan made calls to the Buchanans' cellular phones, and Sullivan does not contend he had an emergency purpose or prior consent. *See* Filing 21 at 3-4 ("I discontinued all calls on this topic or any topic related to Bucky's or Steven Buchanan.") He also does not deny that he used a prerecorded voice. Filing 21. The statute prohibits the use of a prerecorded voice *or* an ATDS, so the Court need not reach Sullivan's contention that his Faxtel 2000 system is not an ATDS within the meaning of the statute to find that he violated the law. *See* 47 U.S.C. § 227(b)(1)(A)(iii); Filing 14 at 3. Although Sullivan asserts that he "has not presented a message that is illegal," under the TCPA, the means he has chosen to repeatedly deliver his message to the Plaintiffs' cell phones is unlawful. *See* Filing 16 at 2; 47 U.S.C. § 227(b)(1)(A)(iii). Thus, the Buchanans have demonstrated the prerequisites to enjoin Sullivan from making further unlawful calls to their cellular phones.

### B. Violation of Law

To issue an injunction pursuant to a statute, Eighth Circuit precedent requires the Court to find both that "the prerequisites for the remedy have been demonstrated and the injunction would

---

[2] "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing[] and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1843, 68 L. Ed. 2d 175 (1981) (citations omitted).

fulfill the legislative purpose." Stover, 650 F.3d at 1106 (quoting White, 769 F.2d at 515). The TCPA "was designed to 'protec[t] telephone consumers from th[e] nuisance and privacy invasion' caused by automated and prerecorded phone calls. The Act, among other things, bans almost all robocalls made to cell phones." Barr v. Am. Ass'n of Political Consultants, Inc., __ U.S. __, 140 S. Ct. 2335, 2357, 207 L. Ed. 2d 784 (2020) (Breyer, J., concurring in part) (alteration in original) (citation omitted). Congress could have limited the statute to calls made for commercial purposes, but it did not. *See* 47 U.S.C. § 227 et seq. Congress also chose not to grant the Federal Communications Commission ("FCC") discretion to exempt calls to cellular phones that were not made for commercial purposes, as it did with calls made to residential telephone lines. *Compare* 47 U.S.C. § 227(b)(1)(B) (prohibiting robocalls to residential telephone lines unless "exempted by rule or order by the Commission under paragraph (2)(B)"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (containing no allowance for FCC exemption). With respect to 47 U.S.C. § 227(b)(1)(A)(iii), Congress only delegated authority to the FCC to exempt calls to cellular phones that are not charged to the called party. 47 U.S.C. § 227(b)(2)(C). In consideration of this delegated authority, the FCC affirmed "that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number." Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44,144, 44,165 (July 25, 2003) (as codified at 47 C.F.R. § 64.1200(a)(1)(iii)) (emphasis original). The Commission also noted congressional findings that "automated or prerecorded telephone calls were a greater nuisance and invasion of privacy [than live calls]" and "such calls can be costly and inconvenient." *Id.* Thus, the law, regulations, and legislative purpose support enjoining Sullivan from engaging in the very conduct prohibited by the TCPA.

## C. Likelihood of Further Violations

Sullivan argues that because he has not made calls violative of the TCPA since June and because he states he has no intention of making them to the Buchanans again in the future, the Court should not enjoin him from doing so. *See* Filing 21 at 2 ("The discontinuation of any public service message last June will continue indefinitely . . . ."). "In an action for a statutory injunction, once a violation has been demonstrated, the moving party need only show that there is a reasonable likelihood of future violations in order to obtain relief." *S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 897, 97 L. Ed. 1303 (1953) ("The necessary determination is that there exists some cognizable danger of recurrent violation."); *S.E.C. v. Comserv Corp.*, 908 F.2d 1407, 1412 (8th Cir. 1990) (noting to obtain an injunction provided for by statute the movant must show "that there [was] a reasonable likelihood of further violation in the future" (alteration original) (quoting *S.E.C. v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir.1978))).

The Buchanans allege Sullivan has placed at least 75 calls to them between April and August 2020. Filing 23-1; Filing 23-2. He has not denied that allegation. *E.g.*, Filing 21. Sullivan consistently and repeatedly claims on his website, as he has since this summer, that he will continue his efforts to engage Steven Buchanan and others involved with him for years to come. *See generally* Filing 23-1 at 4-40; Filing 23-3 at 6-42. In light of Sullivan's public proclamations that he will continue his efforts, the Court finds the assurances he makes in his affidavit that he will not resume calls in violation of the TCPA unconvincing. The Court finds there is a reasonable likelihood that Sullivan will violate the TCPA in the future, and a preliminary injunction is warranted.

### D. Bond

Having determined that a preliminary injunction is warranted, the Court must determine the amount of security the Buchanans are required to post. Under Federal Rule of Civil Procedure 65(c), it is mandatory that the Court require successful movants to post an appropriate bond. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." (emphasis added)). "However, the 'amount of the bond rests within the sound discretion of the trial court . . . .'" *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (quoting *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976)). The "bond is a security device, not a limit on the damages . . . defendants may obtain . . . if the facts warrant such an award." *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1309 (8th Cir. 1997); *see also Richland/Wilkin*, 826 F.3d at 1043 ( "[I]t was permissible for the district court to waive the bond requirement based on its evaluation of public interest . . . .")

The Court determines a minimal bond will suffice in this case. Under the terms of the preliminary injunction, Sullivan is only enjoined from conduct that violates a federal statute. As Congress determined, the public interest in preventing the "nuisance and privacy invasion" resulting from the calls at issue here is strong. *See Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. at 2357, 207 L.Ed.2d 784. The Court also finds that more than a minimal bond might chill private enforcement of the TCPA, counter to congressional intent. Further, Sullivan has repeatedly represented that he has no commercial purpose behind his calls. *See, e.g.*, Filing 14 at 3 ("Any calls made were for informational purposes and were not solicitations or attempts to market any product."). Thus, enjoining the unlawful calls should pose no risk of economic damage to Sullivan.

8

Sullivan's attorney also informed the Court at the hearing that there would be no harm to his client in issuing this injunction. Accordingly, the Court finds a bond in the amount of $100, or $50 from each Defendant, is appropriate.

### III. CONCLUSION

For the foregoing reasons, the Court concludes the Buchanan's Motion for Preliminary Injunction, [Filing 5](Filing 5), is granted.

IT IS ORDERED:

1. Plaintiffs' Motion for Preliminary Injunction ([Filing 5](Filing 5)) is granted;

2. Morton Sullivan, his agents, employees, and affiliates are enjoined from making calls to Steven and Samantha Buchanan on their cellular telephones using an automatic telephone dialing system and/or a prerecorded voice;

3. This Preliminary Injunction shall continue until modified by further Court order;

4. Pursuant to Rule 65(c) and the provisions of this Order, the Court requires each Plaintiff to post a bond with the Clerk of Court in the amount of $50.00; and

5. This matter is referred to the magistrate judge for case progression.

Dated this 15th day of January, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge